IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEIRDRE M. PAWELL,                        )
                                          )
                Plaintiff                 )
                                          )
        v.                                )        No. 03 C 3158
                                          )
METROPOLITAN PIER AND EXPOSITION          )
AUTHORITY,                                )
                                          )
                Defendant.                )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Deirdre Pawell ("Pawell"), filed suit claiming sex discrimination, sexual harassment,

and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.,

("Title VII"), against defendant Metropolitan Pier and Exposition Authority, ("MPEA"). A jury

returned a verdict in favor of Pawell (Dkt Nos. 119-122), and awarded her damages totaling

$2,861,298.01. After the jury verdict, the parties reached an out of court settlement, the terms of

which are private. (Dkt. No. 140). In light of the settlement reached by the parties, the remaining

matters before the court is Pawell's Petition for Attorneys' Fees and Bill of Costs (Dkt Nos. 136-39).

For the reasons set forth below, this court awards Pawell, as the prevailing party in this matter,

$532,287.91 in attorneys' fees and $10,700.82 in non-taxable costs. This award covers attorneys'

fees and non-taxable costs incurred by Pawell through September 30, 2004. The court also awards

Pawell $17,865.52 for her Bill of Costs. The Bill of Costs awarded represents taxable items incurred

by Pawell through September 2, 2004.

## BACKGROUND

### A. Attorneys' Fees and Non-Taxable Costs

Pawell's petition filed November 2, 2004 requests a total award of $551,900.07 for attorneys' fees and other costs, not taxable in the Bill of Costs, expended by her and her attorneys through September 30, 2004. (Dkt. No. 136 at App. A). This request includes $538,549.25 for Pawell's attorneys' fees and $13,350.82 for the other non-taxable costs. (Id.) MPEA objects to Pawell's requested award of attorneys' fees and non-taxable costs and asserts as follows: (1) the hourly rates billed by attorneys Angel Krull of $230.00 per hour and Fay Clayton of $415.00 per hour are unreasonable, in that they are not in accord with the prevailing market rate for attorneys of similar skill and experience; (2) 76.6 hours billed by Pawell's counsel for tasks performed with MPEA's counsel do not correspond with MPEA's billing records; (3) $5,689.00 in fees related to the deposition, preparation for deposition or trial testimony of Patsy Kennedy because her testimony was stricken at trial; (4) $15,180.00 in fees related to the depositions of Darryl Henderson and Terry Rupp; (5) various billing entries by Pawell's attorneys in which time was billed by two attorneys for the same task; (6) $15,337.99 in attorneys' fees related to Pawell's unsuccessful motions in limine as well as the motion in limine that was granted and then later waived by Pawell's counsel as a result of the line of questioning pursued at trial; (7) thirty six (36) entries for "court filings" and "deliveries" that were performed by paralegals at a rate of $100 per hour; (8) all fees related to avoiding the $300,000 statutory damages cap; (9) the proposed fee award exceeds the damages awarded to Pawell; and (10) $6,400 in witness fees for Dr. Karimi and Dr. Marcotte. (Id.) Pawell contends that MPEA's objections lack merit. Additionally, Pawell contends that MPEA has failed to provide further specifics regarding its objections to items 3, 4, 6 and 7.

2

B. Pawell's Bill of Costs

Pawell's Bill of Costs filed September 2, 2004 requests taxation of costs for the amount of $24,265.52. The requested amount is itemized as follows: (1) $150 for fees of clerk, (2) $16,466.71 for court reporter / transcript fees, (3) $6,444.34 for witness fees, (4) $1,204.47 for exemplification and copies of papers.

MPEA objects to following requests for taxation in the Bill of Costs: (1) $1,005.63 in court reporter / transcript cost because the invoice submitted by Pawell does not identify the deponent, (2) $420.88 in court reporter / transcript costs related to the deposition of Pasty Kennedy because her testimony was stricken at trial, (3) $1,234.20 in court reporter / transcript costs for the depositions of Daryl Henderson and Terry Rupp because neither individual were called to testify at trial, (4) the taxation of costs related to the "fast delivery rate" for transcripts of the depositions of Harry Mabs, Kimberly McCullough and Patsy Kennedy, (5) $44.24 in witness fees paid to Patsy Kennedy because her testimony was stricken at trial, (6) $2,400 in costs for Dr. Susan Marcotte due to the fact that the costs relate to the plaintiff's failure to properly schedule Dr. Marcotte as a witness, (7) $4,000 in costs related to "court presence" billed by Dr. Farid Karimi because the cost was due to the plaintiff's failure to properly schedule Dr. Karimi as a witness and in addition there is no proof that payment has been provided to Dr. Karimi. (Dkt. No. 131.)

STANDARD OF REVIEW

"Determination of a [attorney's] fee award is left to the discretion of the district court in light of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" Wengryn v. Connor Sports Flooring Corp., No. 01 C 1519, 2002 WL 2022608, at *2 (N.D. Ill. Sept. 3, 2002) (quoting Hensley v. Eckerhart, 461 U.S.

3

424, 437 (1983); Eddleman v. Switchcraft, Inc., 965 F.2d 422, 424 (7th Cir. 1992)). "A district court is within its discretion to reduce the number of hours requested, or the hourly rate requested, as long as it provides a reasonable, and 'concise but clear explanation of its reasons." Hacket v. Xerox Corp. Long-Term Disability Income Plan, – F. Supp. 2d –, No. 00 C 3140, 2005 WL 181809, at *2 (N.D. Ill. Jan. 24, 2005) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 551, 554-55 (7th Cir. 1999)).

## ANALYSIS

### A. Attorneys' Fees and Non-Taxable Costs

Title 42, United States Code, Section 2000e-5(k) states that "a court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). "The purpose of an award of attorney's fees to the prevailing party in civil rights litigation is to protect the ability of those with civil rights grievances to obtain competent counsel and effectively access the judicial process." Flaherty v. Marchand, 284 F. Supp. 1056, 1061 (N.D. Ill. 2003) (citing City of Riverside v. Rivera, 477 U.S. 561, 577-78 (1986); Simpson v. Sheahan, 104 F.3d 998, 1002 (7th Cir. 1997)). The court must determine whether: (1) Pawell is a prevailing party, and (2) the reasonableness of the award she requests.

#### 1. Prevailing Party

"A plaintiff 'prevails' when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). An enforceable judgment on the merit is sufficient to satisfy the prevailing party requirement. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res., 532 U.S. 598, 603-04 (2001). The parties

4

did voluntarily dismiss the case after a settlement was reached on the substantive issues. However, the settlement does not prevent Pawell from obtaining prevailing party status because she was successful in receiving a judgment on the merits and an award of damages from the jury in this case. Pawell is a prevailing party in this matter.

### 2. Reasonable Attorneys' Fee Award

"Attorneys' fees are assigned a 'lodestar' amount, [a figure which is] calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." Mathur v. Board of Tr. of Southern Illinois Univ., 317 F.3d 738, 742 (7th Cir. 2003) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 872 (7th Cir. 1995)). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999). The initial lodestar figure may be further adjusted by the court based on a number of factors[1]. Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175620, at *1 (N.D. Ill. Sept. 19, 2003) (citing Hensley, 461 U.S. at 434)).

The following two tables detail the attorneys' fees award requested by Pawell and proposed by MPEA in the Joint Statement Regarding Attorney's Fees. (Dkt. No. 136 at App. A) The items in bold are matters disputed by the parties.

---

[1] These factors may include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Mather, 317 F.3d at 742 n.1.

| Lodestar Calculation Proposed by Pawell | | | |
|---|---|---|---|
| Attorney / Clerk / Paralegal | Hours | Rate Per Hour | Amount Requested |
| **Angel M. Krull** | **886.3** | **$230.00** | **$203,849.00** |
| Aaron T. Travis | 14.1 | $100.00 | $1,410.00 |
| Cynthia H. Hyndman | 4.9 | $330.00 | $1,617.00 |
| C. Phillip Curley | 1.1 | $415.00 | $456.50 |
| **Fay Clayton** | **643.85** | **$415.00** | **$267,197.75** |
| **John D. Cummins** | **128.8** | $290.00 | **$37,352.00** |
| Julie J. Bannester | 131.4 | $100.00 | $13,140.00 |
| Richard D. Schwartz | 17.6 | $110.00 | $1,936.00 |
| Robert Margolis | 20.7 | $300.00 | $6,210.00 |
| Thomas H. Miller | 0.4 | $100.00 | $40.00 |
| Teresa Seva | 46.9 | $100.00 | $4,690.00 |
| **Susan Valentine** | **2.1** | $310.00 | **$651.00** |
| Total | | | **$538,549.25** |

| Lodestar Calculation Proposed by MPEA | | | |
|---|---|---|---|
| Attorney / Clerk / Paralegal | Hours | Rate Per Hour | Amount Requested |
| **Angel M. Krull** | **753** | **$140.00** | **$105,420.00** |
| Aaron T. Travis | 14.1 | $100.00 | $1,410.00 |
| Cynthia H. Hyndman | 4.9 | $330.00 | $1,617.00 |
| C. Phillip Curley | 1.1 | $415.00 | $456.50 |
| **Fay Clayton** | **527.35** | **$285.00** | **$150,294.75** |
| **John D. Cummins** | **105.9** | $290.00 | **$30,711.00** |
| Julie J. Bannester | 131.4 | $100.00 | $13,140.00 |
| Richard D. Schwartz | 17.6 | $110.00 | $1,936.00 |
| Robert Margolis | 20.7 | $300.00 | $6,210.00 |

| | | | |
|---|---|---|---|
| Thomas H. Miller | 0.4 | $100.00 | $40.00 |
| Teresa Seva | 46.9 | $100.00 | $4,690.00 |
| **Susan Valentine** | **0.1** | $310.00 | **$31.00** |
| **Total** | | | **$315,956.25** |

<u>a . Reasonable Hourly Rate for Attorneys' Fees: Fay Clayton and Angel M. Krull</u>

Ms. Clayton requests an hourly rate of $415.00 and Ms. Krull requests an hourly rate of

$230.00 for the work they performed in this case. MPEA argues that Ms. Clayton should receive

an hourly rate of $285.00 while Ms. Krull should receive an hourly rate of $140.00.[2]

"The determination of an attorney's 'reasonable hourly rate' is to be based on the 'market

rate' for the services rendered. The burden of providing the 'market rate' is on the fee applicant,

however, once the attorney provides evidence establishing his market rate, the burden shifts to the

defendant to demonstrate why a lower rate should be awarded." <u>Spegon</u>, 175 F.3d at 554-55

(internal citations omitted).

"'The reasonable hourly rate (or 'market rate') for lodestar purpose is 'the rate that lawyers

of similar ability and experience in their community normally charge their paying clients for the type

of work in question.'" <u>Garcia</u>, No. 01 C 8945, 2003 WL 22175620, at *2 (quoting <u>Harper v. City of</u>

<u>Chicago Heights</u>, 223 F.3d 593, 604 (7th Cir. 2000)). "Evidence of 'market rate' includes rates other

attorneys in the area charge paying clients for similar work, fee awards from prior cases, the

---

[2] MPEA's Memorandum in Opposition to Plaintiff's Attorneys' Fee Petition also argues
that Elyssa Balingit Winslow and Joyce Pollack's requested fee should be reduced. However,
Ms. Balingit Winslow and Ms. Pollack are not listed on the Joint Statement Regarding
Attorneys' Fees nor does Pawell request fees for them in her petition. Pawell asserts in her reply
brief that the plaintiff's law firm has written off Winslow and Pollack's fees and consequently
they are not at dispute in the petition. (Dkt. No. 145 at 3.)

7

attorney's credentials, and the attorney's actual billing rate." Id. (citing People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1311-13 (7th Cir. 1996)). "In addition, an attorney's affidavit alone cannot establish ... her market rate; however, such affidavit 'in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiff's burden.'" Id. (quoting Harper, 223 F.3d at 604).

Pawell has provided significant evidence to support the requested rate of $415.00 per hour for Ms. Clayton and $230.00 for Ms. Krull. Ms. Clayton and Ms. Krull have presented their respective resumes which detail their legal experience, (Dkt. No. 138 at App. 2), affidavits from other attorneys in practice in the Chicago legal community, (Id. at App. 3), and affidavits submitted by Ms. Clayton in prior cases (Dkt. No. 145 at App. 1, 2). In addition to the credentials presented by Ms. Clayton and Ms. Krull in support of Pawell's petition, the court is also impressed by Ms. Clayton and Ms. Krull's performance before the court in this matter. Ms. Clayton and Ms. Krull's work in this matter resulted in the jury returning an damage award in excess of $2.8 million dollars.

Specifically as to Ms. Clayton's requested rate of $415.00 per hour, the court finds Ms. Clayton is worth every penny of that rate. Ms. Clayton was the chief architect of Pawell's case. Additionally, Ms. Clayton's strategy decisions and her adverse examinations of persons closely associated with MPEA were impeccable. The adverse examinations required a great deal of skill and organization because numerous impeachments were necessary. Ms. Clayton handled each situation with great aplomb. Additionally, Ms. Clayton's closing argument on behalf of Pawell was a masterpiece of courtroom advocacy.

As for Ms. Krull, the court recognizes that Ms. Krull's request rate of $230.00 is above the average fee charged by an attorney with comparable years of experience, but so are Ms. Krull's

8

courtroom skills. Despite the fact that Ms. Krull is in her third year after law school, she spent the first two years working as a Staff Attorney for the United States Court of Appeals for the Seventh Circuit. She made a considerable contribution to the presentation of Pawell's case before this court. At the trial, Ms. Krull made the open statement, performed direct and cross examination of witnesses and provided legal arguments to the court. Ms. Krull also participated in settlement negotiations and appears to have been the primary author of the majority of Pawell's motions and filings with the court. Although Ms. Clayton served as Pawell's lead counsel, Ms. Krull performed a significant portion of the legal work in this matter. In light scope of Ms. Krull's participation and the high quality of her performance during the trial of the case, the court believes that the rate of $230.00 per hour requested for Ms. Krull is a reasonable and appropriate figure. Consequently, this court rejects MPEA's arguments as to Ms. Clayton and Ms. Krull's billing rate and awards Ms. Clayton a billing rate of $415.00 per hour and Ms. Krull a billing rate of $230.00 per hour in this matter.

### b. Hours Reasonably Expended

The remaining attorneys' fees items disputed between the parties relate to whether the request items represent hours reasonably expended by Pawell's attorneys. Pawell "may recover only those hours that [her] attorneys would bill in the private sector. Garcia v. City of Chicago, No. 01 C 8945, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003) (citing Hensley, 461 U.S. at 434)). This court must exclude "hours that are excessive, redundant, otherwise unnecessary," Id., and a petition for fees must provide sufficient description of the type of work performed. Kotsilieris v. Chalmers, 966 F.2d 1181, 1187 (7th Cir. 1992). "A court should not require any more [level of detail or itemization in the plaintiff's billings] than the level of detail paying clients find satisfactory." Garcia, No. 01 C 8945, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003) (citing In the Matter of Synthroid Mktg.

9

Litig., 264 F.3d 712, 722 (7th Cir. 2001)).

### i. 76.6 Hours in Disputed Billings

MPEA objects to 76.6 hours requested by Pawell. The 76.6 hours involve events jointly performed by Pawell and MPEA's attorneys. MPEA asserts that 41.3 hours of Pawell's billings do not correspond to MPEA's billings for the same event. MPEA also asserts that on 11 entries Pawell and MPEA's billings for the same event do correspond but Pawell's billed 35.3 hours more than MPEA's for the same task. Furthermore, MPEA argues that Pawell's attorneys failed to keep detailed enough billing records and at other times performed "block billing." Consequently, MPEA argues that the court could reduce Pawell's requested fees by at least 25% or $7,296.00 for incomplete billings from May 8, 2003; June 10, 2003; August 26, 2003; September 26 and 30, 2003; October 1, 14 and 20, 2003; November 20, 25 and 26, 2003; December 2 and 4, 2003; January 20, 26, 28 and 29, 2004; February 2, 4, 11, 20, 23 and 25, 2004; March 2, 4, 9, 26 and 30, 2004; April 6, 27 and 29, 2004; July 6, 2004 and August 17, 2004.

Upon reviewing the documentation and arguments provided by Pawell, this court finds that Pawell's billing records are of enough detail to support her requested award amount for the disputed items. Pawell's records and her supporting evidence provided in her memorandum and appendix provide significant support and explanation for the disputed items. Specifically, Pawell was able to provide copies of correspondence between Pawell and MPEA's attorneys' to support the work performed for a number of the disputed entries. In light of the evidence provided by Pawell, and the small figure disputed by MPEA in relationship to the total amount requested by Pawell, this court rejects MPEA's arguments over the disputed billing amounts.

## ii. $5,689.00 in Fees Related to Patsy Kennedy

MPEA objects to $5,689.00 in fees relating to the deposition and trial testimony of Patsy Kennedy because Kennedy's testimony was stricken at trial. Pawell counters that the fees should be allowed because they relate to time that Pawell's attorneys spent on Kennedy's deposition which was reasonably necessary at the time the deposition was taken. Pawell asserts that Kennedy's deposition was necessary to help her attorneys prepare for a deposition and cross examination of MPEA's Human Resources Manager.

Pawell cites to Cengr v. Fusibond Piping Sys. Inc., to support her claim for fees related Kennedy's deposition and preparation for that deposition because those costs were reasonably at the time they were taken. 135 F.3d 445, 455 (7th Cir. 1998). The court agrees that it was appropriate for Pawell to depose Kennedy and therefore fees related to the deposition should be included any the award. However, the parties do not detail how much of the $5,689.00 relates to Pawell's preparation for the deposition of Kennedy verses how much relates to the preparation for Kennedy's trial testimony, which was ultimately stricken by this court. This court will therefore apply a percentage discount to the $5,689.00 figure instead of engaging in a line by line analysis of which fees relate to the allowable deposition and which fees relate to the stricken trial testimony. The court believes that there are three components to the $5,689.00. (1) Fees related to the preparation and taking of Kennedy's deposition, (2) fees related to preparation and use of Kennedy's testimony in allowable ways during trial (such as preparing for cross examination of other witnesses), and, (3) fees related to the preparation and presentation of Kennedy's testimony at trial which was ultimately stricken by the court. This court will allow two-thirds of the $5,689.00, or $3792.66. This assumes that this estimation represents a reasonable amount of fees related to the two allowed activities of the

11

deposition and permitted trial activities while excluding fees related to the time spent in court that relates to the testimony which was struck at trial. See Hispanics United of Dupage County v. Village of Addison, Illinois, 157 F. Supp. 2d 962, 970 (N.D. Ill. 2001) (citing Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000)) (recognizing the reasonableness of percentage discounts instead of performing line-by-line deductions). Thus, this court shall reduce Pawell's total figure for attorneys' fees by $1,896.34.[3]

### iii. $15,180.00 in Fees Related to Darryl Henderson and Terry Rupp

MPEA objects to fees related to the depositions of Darryl Henderson and Terry Rupp. MPEA asserts that Pawell should not receive fees for Henderson and Rupp's depositions because they were duplicative and unreasonable as demonstrated by the fact that they were not called to testify at trial.

It was reasonable for Pawell to take Henderson and Rupp's depositions and therefore she should receive fees related to these depositions. Although Henderson and Rupp did not testify at trial, their depositions were helpful to Pawell in that she was able to use them as part of her Local Rule 56.1 disclosure during summary judgment. Furthermore, Henderson and Rupp's depositions were helpful to Pawell in preparing her case in that they helped to corroborate information that Pawell had obtained from other employees at MPEA. Therefore, this court rejects MPEA's objection to the $15,180.00 in fees related to Pawell's depositions of Darryl Henderson and Terry Rupp.

---

[3] The $1,896.34 figure represents the one-third unallowed amount. This amount is calculated by subtracting the two-third's allowed amount of $3,792.66 from the total disputed amount of $5,689.00.

### iv.  Billing Entries with Two Attorneys for the Same Activity

MPEA argues that Pawell's fee petition should be reduced by $23,591.00 for events where two of Pawell's attorneys billed for the same activity. The majority of the challenged events involve two of Pawell's attorneys attending the same deposition. The premise of MPEA's argument is that Ms. Krull, "who had only recently completed her clerkship before working on this case, was relatively inexperienced in taking depositions. Thus, Ms. Krull was present for depositions Ms. Clayton conducted, and Ms. Clayton was present for most of the depositions Ms. Krull conducted to provide her with guidance and assistance." (Dkt. No. 143 at 9). Pawell disputes this argument countering that two attorneys were needed since depositions were often scheduled within days of each other, the attorneys were able to discuss strategy during breaks (Dkt. No. 137 at 10), observe witness demeanor and compare testimony on key points (Dkt. No. 145 at 11).

Having more than one attorney attend a deposition or court proceeding is not per se unreasonable. See Lenard v. Argento, 808 F.2d 1242, 1245 (7th Cir. 1987) (refusing to establish a flat rule for the appropriate number of lawyers involved in a case). The question is whether it is reasonable to shift Pawell's fees for these depositions and in-court hearings to MPEA. As this court discussed before, Ms. Krull appears to be an excellent young attorney who ranks favorably in comparison to average attorneys of similar age and experience. This court is more willing to believe Pawell's version of events that her two attorneys were needed at depositions due to strategic reasons related to the case instead of Ms. Clayton supervising Ms. Krull.

The reasonableness of the attorneys' fees associated with these depositions is buttressed by several additional facts. Pawell notes that MPEA had more than one attorney present at many of the depositions in question. MPEA argues that the attorneys were there in different capacities, one

13

MPEA's representative and the other as an employer representative. Regardless of why multiple MPEA attorneys were present at a deposition, that fact is relevant to the court in that it demonstrates that more than one attorney can be needed at a deposition because a party might have two independent needs that require two attorneys to be present at one deposition. Furthermore, Pawell's fee petition does not request a fee award for attorney Elyssa Balingit Winslow. MPEA asserts that Ms. Balingit Winslow's primary purpose in depositions was to "coach" Ms. Krull through the depositions. (Dkt. No. 143 at 9). Pawell, however, did not request reimbursement for fees relating to Ms. Balingit Winslow. See supra note 2. Pawell's ability to exclude a claim for fees related to Ms. Balingit Winslow, contrasted against MPEA's failure to exclude Ms. Balingit Winslow from the argument in their motion, increases this court's belief that Pawell's arguments better reflect what award is reasonable on this issue. Consequently, the court rejects MPEA's arguments as they relate to the reasonableness of the billing entries made by two or more of Pawell's attorneys for the same billing activity.

### v. $15,337.99 in Fees for Motions in Limine

MPEA argues that Pawell's requested fee amount should be reduced by $15,337.99 for unreasonable motions in limine. Pawell filed three motions in limine on June 14, 2004. (Dkt Nos. 63-65). The first motion sought to exclude certain evidence of Pawell's miscarriage, (Dkt. No. 63), the second motion sought to exclude an advice-of-counsel defense, (Dkt. No. 64), and the third motion sought to exclude statements made during an Equal Employment Opportunity Commission ("EEOC"), mediation conference. (Dkt. No. 65). This court granted Pawell's second motion seeking to exclude an advice-of-counsel defense based on the MPEA's response. (Dkt. No. 87). The court denied Pawell's other two motions in limine but noted that the final decisions on evidence

14

would be made at the trial. (Dkt. Nos. 86, 88).

MPEA asserts that Pawell should not receive attorneys' fees relating to the two unsuccessful motions in limine. MPEA asserts that it is unable to identity the total costs associated with the two challenged motions in limine due to block billing by Pawell's attorneys. Instead, MPEA argues that the court should consider the work performed on May 27 and 28, 2004; and June 10, 11, 14, 15, 16, 17, 18, 21 and 24, 2004 as work performed for the motions in limine since Pawell's attorneys' billing records on those days make a reference to working on motions in limine. MPEA then in turn argues that two-thirds of the time on those days should be disallowed since two of the three motions in limine were denied.

The Supreme Court in Hensley v. Eckerhart held that a plaintiff who is successful on one claim cannot receive attorneys' fees for a second unsuccessful claim that is unrelated to the first successful claim. 461 U.S. 424, 434-35 (1983). That is not the factual situation in the present matter. The factual situation in this case is two unsuccessful motions made in an attempt to further what ended up being a very successful claim. "A losing argument in support of a successful claim for relief is fully compensable time. ... [C]ourts may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim." Jaffee v. Redmond, 142 F.2d 409, 414 (7th Cir. 1998) (internal citations omitted). Consequently, the court denies MPEA's argument to exclude attorneys' fees related to the motions in limine.[4]

### vi. Paralegal Activities

---

[4] The court also notes that the $15,337.99 presented by MPEA is in itself an unreasonable estimate of the time spent by Pawell's attorneys on the two denied motions in limine. The motions at issue were submitted by Pawell on June 14, 2004. (Dkt Nos. 63-65). Work performed by Pawell's attorneys on June 15, 16, 17, 18, 21 and 24, 2004 relate to responding to MPEA's motions in limine, not Pawell's motions.

15

MPEA challenged $2,390.00 in fees for "deliveries" and "court filings" performed by paralegal staff at a rate of $100.00 per hour. MPEA argues that these tasks should have been performed by a lower costing employee such as a secretary or messenger because delivering documents and court fillings is not sufficiently complex to justify a paralegal's time. The $2,390.00 figure relates to challenged paralegal activities on 29 dates. Pawell argues that the use of a paralegal is reasonable in light of the fact that filing documents in federal court is not a purely clerical activity but instead requires a professional paralegal. Furthermore, MPEA's own billing records show similar delivery costs performed by paralegals. Pawell also argues that her counsel has completely written-off the disputed filing and delivery costs on August 15, 2003, September 23, 2003 and July 20, 2004 so the actual amount in dispute is $1,970.00. The court does note that the amounts billed by paralegals on those three days have a "no charge" notation next to the billing amount and therefore the court accepts the $1,970.00 figure as the amount in dispute between the parties.

"The relevant inquiry for requested paralegal fees is 'whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 553 (7th Cir. 1999) (quoting People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1315 (7th Cir. 1996)). The filling and delivery of documents is sufficiently simple enough to allow for the performance by non-professional staff charging a lower dollar per hour figure. The court concludes that a billing rate of $30 per paralegal hour spent on non paralegal clerical activities is an appropriate amount to allow. See Taylor v. Barnhart, No. 00 C 7782, 2002 WL 31654944, at *3 (N.D. Ill. Nov. 22, 2002) (providing a rate of $25 per hour rate for clerical functions such as filing and serving court papers in 2002). Therefore, the court shall award $591.00 in fees for clerical work performed by

paralegals and thus will reduce Pawell's total requested attorneys' fee award by 1,379.00.[5]

### vii. Research Relating to Avoiding the $300,000 Statutory Damages Cap

MPEA asserts that Pawell's fee request should be reduced by $2,886.00 for the 11.1 hours spent researching the possibility of avoiding the $300,000 statutory damages cap. MPEA believes that the statutory cap is a settled issue in this case and it is inappropriate to charge MPEA for the time Pawell's attorneys spent researching that issue. Pawell asserts that her attorneys were reasonable in the time they spent since the jury award was in excess of $2.8 million dollars, thus $2.5 million dollars was potentially at stake. Pawell also disputes the 11.1 hours figure and instead argues that only 8.0 hours were spent researching the statutory cap issue. Pawell does not provide a dollar figure that corresponds to the 8.0 hours that she believes was spent on researching the statutory cap.

Neither side provides a citation to authority to justify its position as to the fees spent researching the statutory damages question. The ultimate burden to demonstrate the reasonableness of a petition for attorneys' fees is on the petitioning party. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999). The court also concludes, based on the review of the billing provided by Pawell, that the 11.1 hour figure is accurate and therefore shall grant MPEA's request to reduce Pawell's requested award by $2,886.00.

### viii. Proposed Fee in Relation to the Award

In the party's joint statement regarding attorneys' fees, MPEA included a statement that it objected to the proposed fee award on the ground that the attorneys' fees award requested by Pawell exceeds the damages awarded to the plaintiff. Pawell counters MPEA's argument by pointing to the

---

[5] The court arrives at the $591.00 figure by multiplying the $1970.00 by 30%. The 30% figure represents the ratio of the court's award per hour figure of $30 dollars per hour into the $100 dollar per hour figure requested by Pawell.

fact that the jury award exceeded $2.8 million dollars while Pawell is requesting $551,900.07 in attorneys' fees and other non-taxable expenses. Pawell also argues that even when compared to MPEA's proposed damages figure of the $372,211.13 that Pawell would have received once this court applied the $300,000 statutory cap on damages, the $551,900.07 request is still reasonable.

This court need not consider the statutory cap on damages and how it impacts a comparison of the proposed fee to the award for two reasons. First, the MPEA did not address this issue in its response to Pawell's memorandum and therefore MPEA has waived this issue. Second, the parties reached a private settlement, the terms of which are private. Consequently, this court cannot consider the proposed fee in relationship to the final award amount since that amount is contained in a private settlement agreement and to discuss that information in this opinion would result in public disclosure of the private settlement which the parties agreed would remain private.

### ix. $6,400 in Witness Fees for Dr. Karimi and Dr. Marcotte

Pawell petition seeks $4,000.00 in fees charged by Dr. Karimi and $2,400.00 in fees charged by Dr. Marcotte as non-taxable costs. Dr. Marcotte's $2,400.00 represents an hourly rate of $400.00 per hour multiplied by five hours for her attendance at court, travel to and from court, plus a $400.00 rescheduling fee. The rescheduling fee relates to the fact that Dr. Marcotte was scheduled to testify on July 21, 2004 but was postponed until July 22, 2004. Dr. Karimi $4,000.00 represents eight hours for his attendance in court and travel to and from court.

Pawell should receive the time spent by her witnesses testifying in court and traveling to and from court. The disputed question is whether Pawell should receive the time she had to pay for her witnesses while they waited in court. It is the responsibility of both parties' counsel to organize the presentation of their cases in order to effectuate the most efficient proceeding possible. On occasion,

18

however, it is impossible to accurately predict exactly when a witness will testify during a particular trial day. Some delays are unavoidable and the court desires counsel to have witnesses available to testify to make full use of each trial day. In this case, the court, therefore, believes that it is reasonable to allow Pawell to claim reimbursement for one-half of the time her witnesses spent waiting to testify. Consequently, this court will reduce the non-taxable cost of the witness fees for Dr. Karimi and Dr. Marcotte by $2,650.00[6]

### x.  Summary of Attorneys' Fees and Non Taxable Costs

The court awards Pawell the attorneys' fees and non-tax costs requested in her petition less the deductions detailed above. The deductions from the attorneys' fees award relating to the stricken testimony of Patsy Kennedy, clerical activities performed by paralegals and researching into the statutory cap total $6,161.34. After deducting the $6,161.34 figure from Pawell's initial attorneys' fees request of $538,549.25, this court awards Pawell an award of attorneys' fees of $532,287.91. This award covers attorneys' fees incurred by Pawell through September 30, 2004.

The court also awards Pawell the non-taxable costs detailed in her petition less the deductions detailed above. The deduction from non-taxable costs relating to the witness fees for Dr. Karimi and Dr. Marcotte totals $2,650.00. After deducting the $2,650.00 figure from Pawell's initial request of non-taxable costs of $13,350.82, this court awards Pawell an award of non-taxable costs of $10,700.82. This award covers non-taxable costs incurred by Pawell through September 30, 2004.

---

[6] The $2,650.00 figure represents one-half of the estimated time that Dr. Karimi and Dr. Marcotte waited in-court to testify and one-half of Dr. Marcotte's rescheduling fee. The court is granting Pawell the full non-taxable costs of Dr. Karimi and Dr. Marcotte time testifying in-court as well as travel to and from court.

19

## B. Bill of Costs

Pawell's Bill of Costs requests an amount of $24,265.52. "A prevailing party should be awarded costs other than attorneys' fees 'unless the court directs otherwise.'" R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc., No. 99 C 1174, 2005 WL 293512, at *2 (N.D. Ill. Feb. 8, 2005) (quoting Fed. R. Civ. P. 54(d)(1)). "District courts have broad discretion in determining whether and to what extent prevailing parties may be awarded costs." Weeks v. Samsung Heavy Indus., 126 F.3d 926, 945 (7th Cir. 1997). As discussed above, although the parties ultimately settled the case, Pawell is a prevailing party since she received a successful judgment on the merits and award of damages from a jury. The court shall now discuss the items in Pawell's Bill of Costs disputed between the parties.

### 1. $1,005.63 in Transcript & Court Reporter Costs / Deponent is Not Identified

MPEA objects to the proposed taxation of $1,005.63 in costs for five depositions when the invoice submitted by Pawell does not identify the deponent. Pawell's response to MPEA's objection provides detailed information on who was deposed for the five contested depositions. (Dkt. No. 131). The court notes that the five contested invoices state that they relate to the Pawell case. MPEA provides no citation to authority that suggests that an invoice must detail the name of the deponent from the deposition in order to be taxable. Upon this court's review of the invoices and Pawell's explanation as presented in her response to MPEA's objections, this court concludes that the five challenged invoices are costs relating to this matter properly taxed in this case. Therefore, the court rejects MPEA's argument on this issue.

### 2. $420.88 in Transcript & Court Reporter Costs / Pasty Kennedy Deposition

MPEA objects to $420.88 in transcript and court reporters costs related to Pasty Kennedy's

deposition since her testimony was stricken at trial. This court has already considered the appropriateness of attorneys' fees related to Pasty Kennedy in this opinion. As part of that consideration, this court determined that it was reasonable at the time for Pawell to depose Kennedy and awarded attorneys' fees for that activity but held that attorneys' fees would not be allowed for her trial testimony since that testimony was stricken. The current costs relate to the deposition of Kennedy. Since this court has already found that it was reasonable for Pawell to have deposed Kennedy, this court must also award Pawell her costs for that deposition. Therefore, this court rejects MPEA's argument on this issue.

### 3.  $1,234.20 in Transcript & Court Reporter Costs / Daryl Henderson and Terry Rupp Deposition

The court also rejects MPEA's argument as it relates to the costs associated with the depositions of Henderson and Rupp. As this court discussed during the attorneys' fees section of this opinion, it was appropriate for Pawell to depose these individuals even though their testimony wasn't ultimately used at trial. In the present case, there depositions were used by Pawell as part of the summary judgment presentations on which Pawell prevailed.

### 4.  Fast Delivery Rate for Transcripts of Harry Mabs, Kimberly McCullough and Patsy Kennedy

MPEA objects to the proposed taxation of costs related to a "fast delivery" rate for transcripts of Mabs, McCullough and Kennedy. The court must admit that it is a bit confused by this objection because MPEA does not submit a total dollar figure that it believes the Bill of Costs should be reduced by. Furthermore, the "fast delivery" rate listed on the invoice for Mabs and McCullough is $2.80 per page. This is lower than the standard delivery charge of $3.15 listed for other deponents. The delivery charge associated with Kennedy is $3.20 per page but this amount does not seem

unreasonable in light of the $3.15 per page delivery charge in other invoices. Therefore, this court rejects MPEA's argument on this issue.

### 5. $44.24 Witness Fee for Patsy Kennedy

MPEA objects to the $44.24 in the witness fee paid to Patsy Kennedy because her testimony was stricken at trial. However, witnesses are paid fees for their availability and readiness to testify in trial regardless of whether their testimony is ultimately accepted by the court. Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago, 38 F.3d 1429, 1442 (7th Cir. 1994). Therefore, this court rejects MPEA's argument on the issue.

### 6. $2,400.00 for Dr. Susan Marcotte and $4,000.00 for Dr. Farid Karimi in Witness Fees

These items have been withdrawn from Pawell's Bill of Costs and instead were included by Pawell in her petition for attorneys' fees. This issue was considered and addressed by the court earlier in the opinion.

After removing the $2,400.00 for Dr. Marcotte and $4,000.00 for Dr. Karimi in requested witness fees, this court awards Pawell $17,865.52 for her Bill of Costs. This figure represents taxable items as of the date of Pawell's Bill of Costs on September 2, 2004.

## CONCLUSION

For the reasons stated herein, this court awards Pawell, as the prevailing party in this matter, $532,287.91 in attorneys' fees and $10,700.82 in non-taxable costs. This award covers the attorneys' fees and non-taxable costs incurred by Pawell through September 30, 2004. The court also awards Pawell $17,865.52 for the taxable costs itemized in Pawell's Bill of Costs and incurred by Pawell through September 2, 2004.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
United States District Judge

DATE: March 4, 2005